## JOSEPH WENTWORTH *vs.* GEORGE YOUNG.

By the *stat.* of 1830, *c.* 478, where the debtor has three swine, of which but one exceeds the weight of one hundred pounds, the one last mentioned " is exempted from attachment, execution, and distress."

The necessity of making an election by the debtor of which he will retain, exists only where he has two swine, each exceeding the weight of one hundred pounds.

TRESPASS against the defendant, a deputy-sheriff, for taking and carrying away one swine, the property of the plaintiff, and converting the same to his own use. The case was submitted on a statement of facts, from which it appeared, that the plaintiff, at the time of the alleged taking, was the owner of three swine, and only three ; that two of said swine weighed less than one hundred pounds each, and that the other, the one taken by the defendant, a deputy-sheriff, on an execution against the plaintiff, was one which had been wintered over, and weighed between two and three hundred pounds, and was taken without the consent of the plaintiff; that he was from home at the time of the taking, and had not an opportunity of making an election which of the swine he claimed to have exempted from attachment and execution ; and that the swine taken, and for the taking of which this action was brought, was of the value of twenty-five dollars. The Court were to render such judgment as should be consonant to law.

The arguments are noticed in the opinion of the Court.

*D. Goodenow & N. E. Paine* for the plaintiff.

*J. T. Paine* for the defendant.

The opinion of the Court was by

EMERY J. — This action comes before us on an agreed statement of facts, and we are to render thereon such judgment as in law ought to be rendered on that statement. The question intended to be raised is on the *statute ch.* 478, passed *March* 17th 1830. By that statute, " two swine, one of which shall not exceed the weight of one hundred pounds, belonging to any debtor in this State, shall be exempt from attachment, execution and distress ; and when any debtor shall own two swine each exceeding the weight

of one hundred pounds, such debtor, by himself or agent, may elect either of the swine to be exempt as aforesaid."

It is contended by the plaintiff, " that this statute should be so construed as to suppress the mischief of detaching the means of supporting life from the poor, and advancing the remedy for their security ; that though the plaintiff was not to have two fat hogs, yet he had a right to elect in this case, and that as he was absent from home at the time of taking, that there was an implied election of the larger hog, and it was incumbent on the officer not to take it."

The defendant replies, that " there should be some sympathy for poor creditors as well as for poor debtors, because he suggests that the exemptions now in favor of the poor debtor, have been advancing by legislation till the exemption may leave the debtor about 1000 dollars, with which his poorer creditor cannot intermeddle. That here the officer was in the due exercise of his duty, and in this case the plaintiff could not elect." It has been said that "the policy of our law between creditor and debtor is, as long as the debtor lives, to give preference to the most cautious and vigilant creditor. To effectuate this principle, the system of attachment by an original process has been adopted. *Grovesnor, Adm'r* v. *Gold,* 9 *Mass. R.* 209." In a question what tools, necessary for ones trade and occupation were exempted from attachment, under the *Mass. stat.* 1805, *ch.* 100, it was held, " that types, printing press, and cases commonly used in the exercise of the art of printing, were considered *not to be exempted,* the special verdict *not finding them to be necessary.* The court said that this statute, *as it is in derogation of the common rights of creditors to secure their debts out of the property of their debtors, ought to have a strict construction ;* according to the true intent and meaning of the legislature, if that can be ascertained. And the Chief Justice observed, that by the laws of *Massachusetts* then existing, in 1816, the imprisonment of a debtor was merely nominal. He might sleep in his own bed, eat at his own table, and carry on business at his usual place, notwithstanding he was legally in jail. If to these privileges be added the right of securing a fortune, under the name of tools of a trade, the situation of the debtor will be often preferable to that of a creditor. *Buckingham* v. *Billings,* 13 *Mass. R.* 82."

Two years after this decision, a question was raised in the same court upon another portion of the same statute, whether "a swine which had been butchered, but not cut up, the only one the debtor owned, was exempt from attachment and execution. It was insisted that pork, when killed and dressed, is no longer a swine." This strict construction was not adopted by the court, "as it would be to convert the intended benefit into an injury ; for the swine would be protected until it became fit for food ; and then be at the mercy of the creditor." "As to cases of difficulty, such as the debtor having one swine alive, another just killed, and perhaps a third in his barrel, when these should arise, the Chief Justice remarked, they would be determined according to their merits, and care he hoped would be taken *that frauds may not be successfully practised* under a statute designed for benevolent purposes." *Gibson* v. *Jenney*, 15 *Mass. R.* 205.

From this historical statement of *the rigid right resulting from the law of attachment*, as it was in our parent state before 1805, by which, "*for months or years a pining destitution might be brought upon a household*" by the grasp of a creditor, if we turn to the progressive amelioration of this law, by legislative enactment, and by judicial exposition, before our separation from *Massachusetts ;* we certainly *cannot condemn the bolder steps in Maine, in the scheme of exemption.* In legislatures elected by almost universal suffrage, we ought not to be surprized that the wants of all the members of the body politic should come, more immediately, under consideration, and may we not conclude that those additional exemptions, which have been *here* introduced, are adopted upon the wise theory of diminishing the ills of life, by endeavors to furnish all with the means of subsistence? And is there not good ground to expect, as a consequence, that a greater stimulus to industry and economy would be created, from the consciousness that *the objects of the owner's care and cultivation would be protected,* the means of comfort be generally extended, fewer temptations excited to obtain credit, or to give it, *a pride of character for justice and punctuality roused and disseminated, the cause of temperance promoted,* and a universal satisfaction with our laws and government pervade the community ?

For the regulation of an enlightened, moral and religious people, the devising of such legal provisions would naturally seem to evince an enlarged, wisely directing, and benevolent intelligence for the advancement of the best interests of society. At any rate, it would at least seem intended to accomplish a great moral reformation. We do not hesitate to declare our belief, that we can trace in this course of legislation, a beneficent combination of such arrangements as must tend to the general happiness of the citizens, and to lessen the necessity of resort to the benefits of the laws for the support of the poor.

In the present case, the debtor was the owner of only three swine. Two of them weighed less than one hundred pounds each. The other, which was taken, had been wintered over, and weighed between two and three hundred pounds. The plaintiff was absent from home at the time of the taking, not having an opportunity of making an election, which of said swine he claimed to have exempted from attachment and execution.

The right of the plaintiff to the exemption of this swine, which was taken, is clear and explicit, by the terms of the statute. It was the only hog exceeding the weight of one hundred pounds, which he then owned. *The law rendered the possession of this animal sacred in his favor,* unless he, understandingly, waived his claim, and voluntarily delivered the swine to be subjected to the execution. *The election of the debtor is called for, only, when he owns two swine, each exceeding the weight of one hundred pounds.*

We consider therefore that agreeably to the principles of law applicable to this subject our judgment should be, as it is, that the defendant is guilty, and that the plaintiff recover against him twenty-five dollars damages and costs.